UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ANNA VALLEE SWAN,

    Plaintiff,

v.

BANK OF AMERICA CORPORATION,

    Defendant.

2:07-CV-00217-PMP-LRL

O R D E R

        Presently before the Court is Defendant Bank of America's Motion for Summary Judgment (Doc. #20), filed on April 11, 2008. Plaintiff filed an Opposition (Doc. #28) and a Statement of Facts in Support of Her Response (Doc. #29) on May 14, 2008. Defendant filed a Reply (Doc. #32) on May 29, 2008. The Court held a hearing on this matter on July 14, 2008.

**I.     BACKGROUND**

        Plaintiff Anna Vallee Swan was terminated from her position at Defendant Bank of America and brings suit for age discrimination and interference with her rights under the Family and Medical Leave Act ("FMLA"). Plaintiff began working for Valley Bank, a predecessor-in-interest to Defendant, in January 1989 as a peak time teller. (Mot. for Summ. J., Ex. A, Dep. of Anna Vallee Swan ["Swan Dep."] at 35-36.) Shortly thereafter, she became a Customer Service Manager, a position that was later named "Assistant Banking Center Manger," or "ABCM." (Id. at 26, 36.) During her tenure with Defendant, Plaintiff worked at various bank branches, most recently at the Paradise Valley branch.

1  (Id.)  As an ABCM, Plaintiff was responsible for the branch's day-to-day operations, such
2  as managing the schedule of the staff, operational compliance, and assisting
3  customers.  (Mot. for Summ. J., Ex. B, Decl. of Thomas J. Nubel ["Nubel Decl."] ¶ 10.)
4  From 2000 through the time of Plaintiff's termination, the Consumer Market Executive for
5  the region including Plaintiff's branch was Scott Malone ("Malone") and the Consumer
6  Market Manager was Thomas Nubel ("Nubel").  (Id. ¶¶ 5-9.)

7  Plaintiff's first disciplinary incident occurred in June 1990, when Plaintiff was
8  issued a Special Evaluation Report due to an unacceptable balancing rating.  (Id.)  The
9  Report included a thirty day warning indicating that if she did not bring her balancing up to
10 acceptable standards, she could be put on probation or terminated.  (Mot. for Summ. J., Ex.
11 A, Attach. 4.)  Plaintiff received a second Special Evaluation Report in April 1992, and was
12 again put on thirty day probation for a "serious breach" in failing to adhere to policies and
13 procedures while balancing the vault.  (Id.; Swan Dep. at 65.)

14 Plaintiff's 1999 performance evaluation indicated her "losses need work."  (Mot.
15 for Summ. J., Ex. A, Attach. 6.)  Plaintiff's annual evaluation for 2000 rated her
16 performance as "meeting goals."  (Id., Ex. A, Attach. 7.)  This rating represented an average
17 of the four quarters, some of which had a "Met Some, Not All" rating, and others of which
18 had an "Exceeds" rating.  (Id.)  The evaluation noted she needed to improve service and
19 losses.  (Id.)  The review also indicated she "needed to be at meets or better" in her next
20 review or she may be terminated.  (Id.)

21 Plaintiff began working at the Paradise Valley Branch in August 2004.  (Opp'n,
22 Ex. 1, Decl. of Anna Vallee Swan ["Swan Decl."] ¶ 15.)  In late 2004, the bank
23 implemented new policies which changed the structure of Plaintiff's position.  (Id. ¶ 24;
24 Swan Dep. at 39-41; Nubel Decl. ¶ 13.)  The new business model required Plaintiff to spend
25 twenty hours per week in the lobby interacting with customers and supervising the tellers.
26 (Swan Dep. at 41.)  The remaining twenty hours were supposed to be spent working with

tellers and on audit functions.  (Id. at 40.)  Previously, Plaintiff's position involved spending more time with tellers and dealing with customers on a one-on-one basis.  (Id. at 40.)

Defendant claims Plaintiff was resistant to these changes and consequently her performance began to suffer.  (Nubel Decl. ¶ 14.)  Plaintiff felt she performed better in areas of auditing and training tellers rather than the "lobby leadership" function.  (Swan Dep. at 43-44.)   She preferred auditing functions and working with the tellers to the lobby functions.  (Swan Decl. ¶ 25.)  However, she denies she was resistant to the change.  (Swan Dep. at 43-44.)  Still, she stated she believed it was not appropriate for her to spend more than the required twenty hours in the lobby.  (Swan Decl. ¶ 25.)

Plaintiff claims she began to experience age discrimination in December 2004.  (Swan Dep. at 58, 64.)  When Malone visited the branch and found Plaintiff was working behind the teller line rather than in the lobby, he told her that "we don't do it this old way anymore. You have to get out front . . . It's the new way."  (Swan Dep. at 51.)  This occurred several times.  (Id. at 52.)  Plaintiff replied, "I'm not an old dog that can't learn new tricks."  (Id.)  Malone did not respond to Plaintiff's comments.  (Id.)

In February 2005, Plaintiff was issued an "Action Plan," which stated that she needed to "demonstrate immediate and sustained improvement" in several areas, such as scheduling, effective management of tellers, and lobby management.  (Mot. for Summ. J., Ex. A, Attach. 8.)  The Action Plan further stated that Plaintiff had "not performed at the level expected to be successful in [her] job."  (Id.)

The bank conducted an unofficial audit of the Paradise Valley branch in early June 2005.  (Nubel Decl. ¶ 17.)  The audit indicated several operational problems, and had it been an official audit, the branch would not have passed.  (Id. ¶¶ 17-18.)  A majority of the problem areas related to functions for which Plaintiff was responsible.  (Id. ¶ 18.)  An unofficial audit does not "count" against the branch, but is used as a tool to identify deficiencies and correct problems.  (Swan Decl. ¶ 46.)

3

1    Immediately after the unofficial audit, Plaintiff was issued written counseling
2 concerning her performance.  (Id. ¶ 47; Mot. for Summ. J., Ex. A, Attach. 9.)  The notice
3 indicates the bank had a number of operational problems, and eighteen of twenty of the
4 problems were within Plaintiff's areas of responsibility.  (Id.)  The notice stated that failure
5 to meet the expectations outlined could result in further disciplinary action up to and
6 including termination.  (Id.)

7    Plaintiff arranged to take six weeks of FMLA leave to have surgery on her foot in
8 July 2005.  (Swan Dep. at 97.)  Because she was not ready to return in six weeks, she took
9 an additional three weeks of leave.  (Id.)  Her leave began on July 8, 2005 and she returned
10 to work on September 9, 2005.  (Id. at 98; Swan Decl. ¶ 51.)

11   While Plaintiff was out on leave, she contacted a district manager and human
12 resources employee for Bank of America in Austin, Texas to inquire about transferring to
13 an Austin branch.  (Id. at 111.)  When Plaintiff followed up by contacting the human
14 resources employee by phone, the employee told Plaintiff she could not transfer because she
15 was on final written warning status in her current position.  (Id. at 113.)  Brandi Martin
16 ("Martin"), the Banking Center Manager at the Paradise Valley branch, communicated
17 Plaintiff's written warning status to a Texas human resources employee in response to the
18 Texas employee's request for information.  (Id.)

19   Plaintiff's 2005 second quarter performance assessment, issued in October 2005,
20 indicated her composite rating in the "results" area "met expectations."  (Id., Ex. A, Attach.
21 10.)  Plaintiff passed by four-tenths of a point.  (Swan Decl. ¶ 49.)  In another area, her
22 composite rating was "does not meet expectations" and in six out of seven sections, she was
23 given a score of "does not meet expectations."  (Id.; Mot. for Summ. J., Ex. A, Attach. 10.)

24   In November 2005, Nubel began making "structured coaching visits" to the
25 Paradise Valley branch to observe and coach.  (Nubel Decl. ¶ 22.)  He made seven such
26 visits between November 3, 2005 and December 30, 2005.  (Mot. for Summ. J., Ex. B,

4

1  Attach. 3.)  Nubel noted there were problems in areas for which Plaintiff was responsible.
2  (Nubel Decl. ¶ 22.)  On November 7, 2005, the bank conducted an official audit of the
3  Paradise Valley branch, and the branch earned a passing score.  (Swan Decl. ¶¶ 56, 58.)
4         In mid-November, Nubel met with Plaintiff and her immediate supervisor about
5  Plaintiff's performance.  (Id. ¶ 24.)  According to Nubel, Plaintiff was resistant to coaching
6  and was condescending and defensive during the meeting.  (Id.)  Plaintiff states she was
7  "confused and angry."  (Swan Decl. ¶ 59.)  The areas addressed in this meeting included
8  many of the same areas address in the February 2005 action plan.  (Nubel Decl. ¶ 24;
9  compare Mot. for Summ. J., Ex. A, Attach. 8 with Ex. B, Attach. 4.)  Nubel directed that a
10 written warning be issued to Plaintiff.  (Nubel Decl. ¶ 24.)  The warning, which Nubel
11 signed, was issued on November 29, 2005.  (Mot. for Summ. J., Ex. B, Attach. 4.)  It listed
12 a number of areas of poor performance, such as demeanor, scheduling tellers, reporting
13 hours correctly, and managerial issues.  (Id.)  It also required Plaintiff to plan schedules on
14 a monthly basis, provide her managers with various reports, and meet other guidelines.
15 (Id.)  The warning noted that "quick checks" would be performed to assess progress.  (Id.)
16 Finally, it noted that failure to perform these actions could result in further discipline or
17 termination.  (Id.)  Plaintiff read, but refused to sign the warning.  (Id.)  According to
18 Nubel, Plaintiff did not meet the requirements outlined in the November 2005 warning.
19 (Nubel Decl. ¶ 26.)  Nubel informed Plaintiff of her termination on December 30, 2005.
20 (Id. ¶ 27.)
21        Plaintiff filed a complaint with the Equal Employment Opportunity Commission
22 ("EEOC") and the Nevada Equal Rights Commission ("NERC") on June 27, 2006.  (Swan
23 Decl. ¶ 70.)  She filed suit in this Court on February 20, 2007 against Bank of America for
24 claims of age discrimination in violation of the Age Discrimination in Employment Act
25 ("ADEA") (count one), retaliatory discharge in violation of the ADEA (count two),
26 discrimination and wrongful termination in violation of the FMLA (count three), retaliatory

1 discharge in violation of the FMLA (count four), age discrimination in violation of Nevada
2 state law (count five), and slander (count six).  Defendant Bank of America now moves for
3 summary judgment, arguing Plaintiff has not demonstrated the existence of a genuine issue
4 of material fact on a myriad of issues and has not offered admissible evidence in support of
5 her contentions.  Plaintiff responds that the evidence supports her claims.

**II.      LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law defines which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id.  A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  Where a party fails to offer evidence sufficient to establish an element essential to its case, no genuine issue of material fact can exist, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact.  Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000).  The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial.  Id.; Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001).  All justifiable inferences must be viewed in the light most favorable to the non-moving party.  County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

## III. DISCUSSION

### A. Discrimination in Violation of the ADEA (Count One)

Defendant argues Plaintiff's ADEA claim is not timely because more than ninety days elapsed between the presumed date she received her right to sue letter and the date she filed this suit. Defendant further argues Plaintiff has not established a prima facie case of discrimination or provided evidence of pretext. Plaintiff responds she filed suit within ninety days of actual receipt of the notice. Plaintiff also argues the evidence supports an inference of discrimination. Because the Court determines that Defendant is entitled to summary judgment based on the merits of Plaintiff's case, as addressed below, the Court need not address whether the claim is time barred.

The ADEA prohibits employers from failing or refusing to hire, discharging, or otherwise discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA protects all persons over age forty. Id. § 631(a). ADEA claims based on circumstantial evidence use the burden shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-06 (1973). Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1207 (9th Cir. 2008). Thus, the proof structure in an ADEA case is the same as that of Title VII. Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 674 (9th Cir. 1988).

#### 1. Prima Facie Case

The plaintiff carries the initial burden of establishing a prima facie case of age discrimination. Diaz, 521 F.3d at 1207. If the plaintiff "has justified a presumption of discrimination," the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. Id. Finally, the burden shifts back to the plaintiff to show the employer's reason was pretexual. Id. The plaintiff has the "ultimate burden of proving that age was a 'determining factor' in the employer's alleged

7

unlawful conduct." Pejic, 840 F.2d at 674.

A plaintiff can establish a prima facie case of age discrimination by demonstrating she was "(1) at least forty years old, (2) performing [her] job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination." Diaz, 521 F.3d at 1207. The requisite degree of proof necessary to establish a prima facie case is minimal on summary judgment and does not need to meet a preponderance of the evidence standard. Coghlan v. Am. Seafoods Co., 413 F.3d 1090, 1094 (9th Cir. 2005).

To satisfy the second element of her prima facie case, a plaintiff must show she was performing her job satisfactorily. To establish this element, a plaintiff must "produce substantial evidence of satisfactory job performance sufficient to create a jury question on this issue." Douglas v. Anderson, 656 F.2d 528, 533 n.5 (9th Cir. 1981). For instance, a plaintiff who showed he "generally performed dependably and without incident" and had relatively few and minor deficiencies met this burden. Diaz, 521 F.3d at 1208. In contrast, a plaintiff who violates company policy and fails to improve performance despite warnings has not demonstrated satisfactory performance. Diaz, 521 F.3d at 1208. An employer's production of significant rebuttal evidence does not necessarily preclude a finding that the Plaintiff met her burden of producing substantial evidence satisfactory job performance for the purposes of her prima facie case. Douglas, 656 F.2d at 533 n.5. Finally, "an employee can satisfy the last element of the prima facie case only by providing evidence that . . . she was replaced by a substantially younger employee with equal or inferior qualifications." Diaz, 521 F.3d at 1207-08 n.2.

Plaintiff meets the first element of a prima facie case because she was over age forty at the time of her termination. (Swan Decl. ¶ 3.) Likewise, she was discharged, which satisfies the third element. Remaining at issue are the second and fourth elements.

The only evidence Plaintiff offers to show her job performance was satisfactory is her own declaration that she was doing a satisfactory job, receiving bonuses, and achieving improved customer service scores. While it is doubtful Plaintiff's general statements that she received bonuses constitute "substantial evidence," the Court will assume Plaintiff has presented a prima facie showing of satisfactory job performance.

Regarding the final element, the parties do not dispute that Plaintiff's replacement was substantially younger than Plaintiff. However, the only evidence Plaintiff offers to demonstrate her replacement had equal or inferior qualifications is Plaintiff's statement that her replacement speaks Spanish and had served as an ABCM for approximately eighteen months at the time she replaced Plaintiff, which is less ABCM experience than Plaintiff had when she started in that branch. Plaintiff provides no evidence concerning what prior relevant experience or education the replacement has or lacks. Moreover, Plaintiff does not compare her replacement's qualifications with her own, except for the length of time each spent as an ABCM. Plaintiff fails to raise a genuine issue of material fact concerning her replacement's equal or inferior qualifications. Plaintiff therefore has failed to establish a prima facie case of age discrimination.

### 2. Defendants' Burden

If a plaintiff makes out a prima facie case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the employment action. This requires the employer only to set forth a legally sufficient explanation for rejecting the plaintiff. Lowe v. City of Monrovia, 775 F.2d 998, 1007 (9th Cir. 1985). This burden is "one of production, not persuasion, thereby involving no credibility assessment." Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1148-49 (9th Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)).

Defendant has provided evidence demonstrating poor performance was the reason for Plaintiff's termination. Defendant has offered copies of performance reviews,

9

warnings, and a declaration by one of Plaintiff's supervisors. Defendant put forth an explanation, which if true, is a legally sufficient non-discriminatory reason for Plaintiff's termination. Defendant therefore has met its burden.

### c. Plaintiff's Evidence of Pretext

If the employer articulates a legitimate, nondiscriminatory reason for the challenged action, the "presumption of unlawful discrimination simply drops out of the picture." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000). The burden then shifts "back to the plaintiff to raise a genuine factual question as to whether the proffered reason is pretextual." Lowe, 775 F.2d at 1008; see also Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002). A plaintiff may use circumstantial evidence to show pretext, but the evidence must be "specific and substantial." Id. (citing Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998)).

"[T]he establishment of a prima facie case based on the minimum evidence necessary to raise a presumption of discrimination does not preclude summary judgment." See Coleman, 232 F.3d at 1282. Summary judgment is appropriate when evidence to refute the defendant's legitimate explanation is lacking. Lindsey, 447 F.3d at 1148. Moreover, a plaintiff cannot survive summary judgment by "simply restating the prima facie case and expressing an intent to challenge the credibility of the employer's witnesses." Lindahl v. Air France, 930 F.2d 1434, 1437-38 (9th Cir. 1991). Rather, a plaintiff must "produce specific facts directly evidencing a discriminatory motive or showing that the employer's explanation is not credible." Id. at 1438. A mere refutation of the employer's legitimate reason is insufficient. Little v. Windermere Relocation, Inc., 301 F.3d 958, 969 (9th Cir. 2002).

Because Plaintiff does not offer any direct evidence of Defendant's discriminatory intent, she must present specific and substantial evidence of intentional discrimination. Plaintiff must demonstrate Defendant's proffered reason for termination is

pretextual and that age was the determining factor in Defendant's conduct.

Plaintiff argues the disciplinary write-ups she received were disingenuous and whether the bank managers believed Plaintiff's performance was deficient is a question of fact. However, Plaintiff offers no specific reasons to distrust the managers' evaluations. Plaintiff may demonstrate pretext by showing Defendant's explanation is unworthy of credence, but she does not explain why Defendant's explanation should be disbelieved. Additionally, an intent to challenge the employer's witnesses, which is akin to Plaintiff's challenging the sincerity of the write-ups, is not sufficient to show pretext.

Moreover, Plaintiff testified she had no reason to believe Nubel wanted to terminate her because of her age. (Swan Dep. at 96.) She also claimed she believed he did not want to terminate her because of her age, but did nonetheless. (Swan Decl. ¶ 67.) Plaintiff offers no basis for the conclusion that Nubel or any other employee of Defendant terminated her because of her age. Because Plaintiff presents no evidence beyond her own unsupported belief that age was a motive for Plaintiff's termination, Plaintiff has not established a prima facie case and has not offered specific and substantial evidence of pretext. The Court therefore will grant summary judgment in favor of Defendant on Plaintiff's ADEA claim.

### B. Age Discrimination Under Nevada State Law (Count Five)

Plaintiff alleges Defendant violated Nevada Revised Statute § 613.310 et seq. on the same basis Defendant violated the ADEA. Defendant argues it is entitled to summary judgment on this claim for the same reasons as it is under the ADEA claim. Defendant argues Plaintiff violated the Nevada statute of limitations because Plaintiff filed suit later than the 180 days the Nevada statute permits. Plaintiff responds she filed her claim within 180 days, though she had 300 days to file her claim.[1]

---

[1] Plaintiff's claim she had 300 days is incorrect. Plaintiff inappropriately relies on a case concerning the timeliness of filing a Title VII complaint with the EEOC: Laquaglia v. Rio Hotel &

11

The relevant statute of limitations mandates that "[n]o action . . . may be brought more than 180 days after the date of the act complained of.  When a complaint is filed with the Nevada equal rights commission the limitations provided by this section is tolled . . . during the pendency of the complaint before the commission."  Nev. Rev. Stat. § 613.430.

Plaintiff was terminated on December 30, 2005.  That date, therefore, represents the latest act of alleged age discrimination.  She filed a complaint with NERC on June 27, 2006, which is 178 days from December 30, 2005.  Taking Plaintiff's declaration as true, she received her right to sue letter on November 24, 2006.  She filed suit in this Court on February 20, 2007.  Because nearly 180 days elapsed by the time she filed her NERC complaint, and approximately another ninety days elapsed between receiving her letter and filing suit, she exceeded the 180 day time limit.  Even excluding the tolling of the limitations period from June 27, 2006 to November 24, 2006, Plaintiff exceeded 180 days between the employer action and filing her suit in this Court.  Section 613.430 therefore bars her claim under Nevada law.  The Court will grant summary judgment in Defendant's favor on this claim.

### C. Retaliatory Discharge in Violation of the ADEA (Count Two)

Plaintiff brings a retaliation claim, alleging Defendant retaliated against her for complaining about age discrimination.  Defendant argues it is entitled to summary judgment because Plaintiff did not exhaust her administrative remedies with respect to this claim.  At the hearing, Plaintiff conceded she did not exhaust this claim and Defendant is entitled to summary judgment.  The Court therefore will grant summary judgment in Defendant's favor on this claim.

---

Casino, Inc., 186 F.3d 1172, 1174 (1999).  In that case, the Court held that the plaintiff's Title VII claim was timely filed with the EEOC because in certain circumstances a plaintiff has 300 days to file a claim with the EEOC.  Id. at 1173.  However, the Court explicitly noted the Nevada state law claim was time-barred for exceeding the state limitations period of 180 days.  Id.

12

**D. FMLA Interference and Retaliation (Counts Three and Four)**

Defendant argues it is entitled to summary judgment on Plaintiff's FMLA claims because Plaintiff has provided insufficient evidence to establish a causal connection between her FMLA leave and her termination. Defendant also argues Plaintiff does not have a separate anti-retaliation claim because Plaintiff's claim is based on alleged punishment for taking leave, not for opposition to unlawful employment practices, or other protected activity. In response, Plaintiff argues her termination closely followed her FMLA leave. Plainitiff does not acknowledge the distinction between the two types of claims and addresses only the interference claim.

An interference with FMLA rights case concerns situations in which an employee is subject to negative consequences for using FMLA leave. Xin Liu v. Amway Corp., 347 F.3d 1125, 1136 (9th Cir. 2003); 29 U.S.C. § 2615(a)(1). In contrast, an anti-retaliation case under the FMLA concerns employees who are punished for opposing unlawful practices. Xin Liu, 347 F.3d at 1136; 29 U.S.C. § 2615(a)(2).

Title 29 U.S.C. § 2615(a)(1) provides, "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under this subchapter." Interference includes employer actions that deter employees' participation or attach negative consequences to taking leave. Bachelder v. Am. West Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir. 2001). To establish an interference case, a plaintiff must demonstrate that her taking FMLA leave constituted a "negative factor" in the decision to terminate her. Bachelder v. Am. West Airlines, Inc., 259 F.3d at 1125 (citing C.F.R. § 825.220). The McDonnell Douglas burden shifting framework does not apply to FMLA interference cases. Xin Liu, 347 F.3d at 1136.

Close temporal proximity between the leave and termination may support a causal connection between those events. Id. However, while mere temporal proximity may support an inference of causation, the proximity must be "very close," such as several days

13

rather than several months. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (analyzing whether a plaintiff established a prima facie case in the context of Title VII retaliation). See also Hite v. Vermeer Mfg. Co., 446 F.3d 858, 866 (8th Cir. 2006) (holding temporal proximity must be "very close" to create inference of causation in context of FMLA interference); Arban v. West Pub. Corp., 345 F.3d 390, 403 (6th Cir. 2003) (holding mere temporal proximity is insufficient to demonstrate pretext in the context of a plaintiff's termination after taking FMLA leave); King v. Preferred Tech. Group, 166 F.3d 887, 893 (7th Cir. 1999) (holding close proximity is sufficient to establish a prima facie case of FMLA retaliation if the action took place "on the heels of" the activity).

Plaintiff argues her disciplinary incidents temporally corresponded with her giving notice of and taking FMLA leave. Plaintiff claims she was disciplined close in time to giving Defendant informal notice of her intent to take leave, but does not indicate when she gave the informal notice, or how close in time it was to the write-ups. Plaintiff states only that she received a write up "after" giving informal notice of her anticipated need to take leave. (Swan Decl. ¶ 38.) Additionally, almost four months elapsed between her return from leave and her termination. Other than temporal proximity, Plaintiff offers no evidence of a causal connection between her FMLA and her write-ups and termination.

Absent other evidence, Plaintiff's termination four months after Plaintiff returned from leave does not support an inference that FMLA leave was a negative factor in Defendant's decision to terminate her. Because Plaintiff does not raise a genuine issue of material fact as to whether FMLA leave was a negative factor in Defendant's employment decisions concerning Plaintiff, Defendant is entitled to summary judgment on the FMLA interference claim. Additionally, Plaintiff does not plead facts alleging a retaliation claim under FMLA, she does not offer evidence supporting this claim, and does not address Defendant's arguments regarding this claim in her Opposition. The Court therefore will grant Defendant's motion for summary judgment on the retaliation claim.

### E. Slander (Count Six)

Plaintiff's slander claim is based on Martin informing a bank human resources employee that Plaintiff was on "final written warning" status, which negatively affected Plaintiff's ability to transfer to another branch. Plaintiff alleges this statement was false because her written warning status was not "final." Defendant argues it is entitled to summary judgment because the statement was not false, Plaintiff has not demonstrated fault, and the statement is protected by intra-corporate privilege. Plaintiff responds that her write-ups were part of a campaign to get rid of her, were false, and made in bad faith. Defendant replies that it addressed the cause of action pled in the Complaint, Plaintiff improperly responded with a new basis for liability without responding to the original one, and therefore Defendant is entitled to summary judgment under Federal Rule of Civil Procedure 56(e)(2).

### 1. Prima Facie Case

To establish a prima facie case of defamation, in this case slander, a plaintiff must prove: "(1) a false and defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." Simpson v. Mars, Inc., 929 P.2d 966, 967 (Nev. 1997). A statement is not defamatory if it is true or substantially true. Pegasus v. Reno Newspapers, Inc., 57 P.3d 82, 88 (Nev. 2002).

Plaintiff had been issued a written warning indicating that failure to meet expectations could result in further disciplinary action including termination. Plaintiff has not offered evidence to refute Defendant's contention that this constituted "final written warning" status. Plaintiff did not respond to Defendant's argument that the relevant statement was true or at least substantially true, or provide evidence to controvert Defendant's statement. Thus, Plaintiff has failed to raise a genuine issue of material fact as to the statement's falsity. Plaintiff therefore has failed to establish a prima facie case of

15

slander.

### 2. Privilege

Certain intra-corporate communications are privileged. Pope v. Motel 6, 114 P.3d 277, 284 (Nev. 2005). Privileges are defenses, and not part of the prima facie case. Pope, 114 P.3d at 284. Defendant corporations therefore have the burden of alleging and proving the privilege's existence. Id. To be privileged, the communication must be made in the regular course of the corporation's business. Id. A privilege exists where a defamatory statement "is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if it is made to a person with a corresponding interest or duty." Circus Circus Hotels, Inc. v. Witherspoon, 657 P.2d 101, 105 (Nev. 1983). Whether such a privilege exists is a question of law. Id. If a defendant establishes a privilege, the burden shifts to the plaintiff to show the defendant abused it by publishing the communication with malice, including bad faith or ill will. Id. The question may go to a jury only if the plaintiff presents sufficient evidence for the jury reasonably to infer malice. Id. Statements made in the course of a background investigation of an employee is subject to this conditional privilege. Bank of Am. Nev. v. Bourdeau, 982 P.2d 474, 476 (Nev. 1999).

Defendant offered evidence supporting its claim of intra-corporate communication privilege. It was within Martin's duties as a Banking Center Manager to respond to inquiries about transfers concerning employees at the Paradise Valley Branch. (Nubel Decl. ¶ 31.) Martin made the statement to a fellow bank employee inquiring about Plaintiff for the purposes of employment. Thus, the statement was made between two bank employees, in the course of investigating Plaintiff as a potential employee of another branch. Discussing employee performance and status is in the course of the human resources employees' regular course of business. Plaintiff has provided no evidence to demonstrate such a communication was not in Martin's regular course of business, or show

16

the privilege was abused. She states that Defendant lacked good faith, but offers no evidence to support that allegation. Defendant has demonstrated a privilege, and Plaintiff has not offered evidence Defendant abused the privilege, or from which a jury could reasonably infer malice. Defendant established the defense of privilege.

### 3. Disciplinary Write-Ups as Slander

In her Opposition, Plaintiff changed the factual basis of her claim from Martin's statement to the content of Plaintiff's disciplinary write-ups, arguing the write-ups were disingenuous and therefore constitute slander. Federal Rule of Civil Procedure 8(a) requires that plaintiffs provide "a short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). Though federal pleading is notice pleading, the plaintiff still must present a definite issue for adjudication. Ideal Elec. Co. v. Flowserve Corp., 357 F. Supp. 2d 1248, 1253 (D. Nev. 2005). A plaintiff who does not allege facts sufficient to place the defendant on notice of a particular basis for a claim may not proceed with an argument raised in a responsive pleading at the summary judgment stage. See id.; see also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000).

Plaintiff may not change the basis of her claim at the summary judgment stage. In any event, Plaintiff has not indicated how the write-ups were false, or to whom they were published. If the Court were to consider the changed factual basis of her claim, she has not established a prima facie case of slander.

Regarding Martin's statement to the Texas human resources employee, Plaintiff has not raised a genuine issue of fact as to whether Defendant's statements were false, or not substantially true. Additionally, Defendant has established the statement was privileged, and Plaintiff has not refuted the privilege, or offered any basis to show Defendant abused the privilege. Likewise, even if the Court were to consider the write-ups

as the basis for Plaintiff's slander claim, Plaintiff does not establish a prima facie case. The Court therefore will grant summary judgment in favor of Defendant on Plaintiff's slander claim.

### IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant Bank of America's Motion for Summary Judgment (Doc. #20) is hereby GRANTED.

Judgment is hereby entered in favor of Defendant and against Plaintiff.

DATED: July 22, 2008.

_____

PHILIP M. PRO
United States District Judge

18